## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                      :
JESUS O. TIRADO,                      :          CIVIL ACTION
                        Plaintiff,    :
                                      :
        v.                            :          NO. 19-122
                                      :
ANDREW M. SAUL,[1] COMMISSIONER       :
OF SOCIAL SECURITY,                   :
                        Defendant.    :
_____:

Henry S. Perkin, M.J.                                    March 30, 2020

## <u>MEMORANDUM</u>

Plaintiff, Jesus Onel Tirado[2] ("Plaintiff"), brings this action under 42 U.S.C. §

1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final

decision of the Commissioner of Social Security ("Defendant"), denying her claim for

supplemental security income benefits ("SSI") provided under Title XVI of the Social

Security Act ("the Act"). 42 U.S.C. §§ 401-434. Subject matter jurisdiction is based

upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is

Plaintiff's Request for Review and the Defendant's Response Brief. For the reasons that

follow, the relief requested by the Plaintiff is denied and the decision of the

Commissioner is affirmed.[3]

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiff is a transgendered female, therefore the Court utilizes the pronouns "she" and "her" throughout this Memorandum.

[3] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. 636(c). *See* Standing Order, In RE: Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program)(E.D. Pa. Sept. 4, 2018); ECF No. 4 ¶ 2; No. 21.

# I.    <u>PROCEDURAL HISTORY</u>

On October 2, 2015, Plaintiff filed a Title XVI application for SSI alleging disability beginning on January 1, 2008 due to depression, anxiety, problems with her left arm and feet, human immunodeficiency virus ("HIV"), and a lump in her abdomen.  (Tr. 87, 134.)  The claim was denied initially and Plaintiff timely filed a Request for Hearing by an Administrative Law Judge ("ALJ") on February 10, 2016.  (*Id.* at 99-103, 104.)  On December 13, 2017, Plaintiff and her boyfriend William Downing appeared and testified without counsel at a hearing before ALJ Nicholas R. Foster in West Chester, Pennsylvania. (*Id.* at 61-86.)  Mitchell Schmidt, an impartial vocational expert, was present on the telephone for the hearing but did not testify, and later completed written interrogatories on January 2, 2018, finding that a significant number of jobs existed in the national economy that an individual with Plaintiff's residual functional capacity ("RFC") could perform.  (*Id.* at 58-59, 218-21.)

On March 7, 2018, ALJ Foster issued an unfavorable decision finding that Plaintiff was not disabled from October 2, 2015 to March 7, 2018.  (*Id.* at 18-27.)  On May 15, 2018, Plaintiff timely filed a Request for Review of Hearing Decision/Order with the Appeals Council.  (Tr. 133.) On December 20, 2018, the Appeals Council denied Plaintiff's request for review, making ALJ Foster's decision the final decision of the Agency. (*Id.* at 1-5.)

Plaintiff filed a *pro se* appeal in this Court, seeking the appointment of counsel. The case was placed with the Social Security Volunteer Attorney Panel, and Plaintiff's counsel accepted the appointment.  Thereafter, Plaintiff, through counsel, consented to the jurisdiction of this Magistrate Judge.

## II.  <u>AGE, EDUCATION, WORK EXPERIENCE</u>

Plaintiff was born in March of 1983 in Puerto Rico and was 32 years old, which is defined as a younger individual age 18-49,[4] on October 2, 2015, the date she filed her application for benefits. (*Id.* at 26.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2, 2015, her alleged onset date. (*Id.* at 26-27.) She has an eighth grade education and is able to communicate in English but has no past relevant work history. (*Id.* at 26.)  Plaintiff lives in an apartment with her boyfriend, William Downing, who financially supports her.  (*Id.* at 75.)  She testified that she has daily lower back pain, she wore a back brace every day for the year prior to the hearing to help support her, she has a hernia and tendon/ligament issues related to her left elbow which easily dislocates (and for which she may get a ligament implant), she has pain in her flat feet and she has asymptomatic HIV, anxiety and depression.  (*Id.* at 72, 73, 74, 78.)  Plaintiff contends that she has more depression when she is in pain and she "get[s] aggravated."  (*Id.* at 74.)  Plaintiff testified that she had to return to Puerto Rico to see her brother and sister who passed away and her aunt also passed away the year prior to the hearing.  (*Id.* at 72.)  Plaintiff has attempted suicide three times.  (*Id.* at 83.)  She has to drag herself from bed everyday.  (*Id.* at 67.)  Mr. Downing testified that Plaintiff needs no reminding to take her medication, but when she does not take her medication, she is "[e]vil.  She's not, she's not the person that she is sitting here now.  She'll be irate" and "a complete different person."  (*Id.* at 79-80.)  Plaintiff enjoys gardening and flower

---

[4]     Because Plaintiff qualified as a "younger person" under the regulations, her age is not considered a significant impediment to adapting to new work situations.  20 C.F.R. § 416.963(b)(2000).  The Court must "cautiously scrutinize the employment prospects of so young an individual before placing [her] on the disability rolls."  *Lockley v. Barnhart*, No. 05-5197, 2006 U.S. Dist. LEXIS 29722, at *2 n.1 (E.D. Pa. May 16, 2006) (Baylson, J.)(quoting *McLamore v. Weinberger*, 530 F.2d 572, 574 (4th Cir. 1976)).

arranging although Mr. Downing takes care of the yardwork. (*Id.* at 80-81.) Plaintiff and

Mr. Downing share cooking duties and Plaintiff performs household chores when she

feels better and is able to do so. (*Id.* at 75, 81.) Mr. Downing also testified that although

Plaintiff needs no reminders to take her medication, she needs a lot of reminders

regarding scheduled appointments and she lacks the ability to concentrate, stay focused,

and be on time and on schedule. (*Id.* at 79, 82.) Plaintiff testified that she is always by

herself at home and has no friends although Mr. Downing testified that she does have

friends. (*Id.* at 74, 80.)

## III.    ALJ DECISION

The ALJ found that Plaintiff's depression and anxiety were severe impairments.

(*Id.* at 20.) The ALJ further found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments, specifically Listings 12.04 and 12.06. (*Id.* at 21.) The ALJ provided

the following RFC assessment:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform a full range of
> work at all exertional levels but with the following non-exertional
> limitations: the claimant is limited to the performance of simple, routine,
> and repetitive tasks requiring no more than simple workplace judgment
> and with no more than occasional changes in the routine work setting.
> The claimant should also have no more than occasional and superficial
> contact with the public and no more than occasional contact with
> supervisors and co-workers.

(*Id.* at 22.) The ALJ also found that considering Plaintiff's age, education, work

experience, and residual functional capacity, jobs exist in significant numbers in the

national economy that she can perform. (*Id.* at 1284-1285.) The VE identified

representative occupations such as box bender, DOT# 641.687-010 (40,000 jobs

nationally); mold filler, DOT# 556.687-030 (50,000 jobs nationally); and hand packager, DOT# 920.587-018 (2,000,000 jobs nationally). (*Id.* at 26.) Thus, the ALJ found that Plaintiff had not been disabled since October 2, 2015, the date her application was filed. (*Id.* at 27.)

## IV.    LEGAL STANDARD.

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. *Richardson v. Perales*, 402 U.S. 389, 407 (1971) (quoting *Consol. Ed. Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 113 S.Ct. 1294 (1993). Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence. Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984). The Supreme Court recently reiterated the standard for substantial evidentiary sufficiency "is not high" and it is only "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. *See id.* § 404.1520(b)-(f).

*Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431-32 (3d Cir. 1999). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, *work* experience and residual functional capacity. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

## V.    <u>DISCUSSION</u>.

Plaintiff sets forth the following arguments why the ALJ Decision in this case was erroneous. She specifically contends:

1.    Because Plaintiff was unrepresented at the ALJ hearing, the ALJ had a heightened duty to "conduct a full and fair inquiry into, scrupulously and conscientiously probe into, inquire of, and

explore for all the relevant facts" (Pl.'s Br., pp. 4-6);

   2.      The ALJ erred by failing to evaluate the medical opinion evidence in accordance with the regulations, Agency policy, and Third Circuit precedent (Pl.'s Br., pp. 6-13); and

   3.      The ALJ erred by failing to address all the medical evidence of record, which error was not harmless (Pl.'s Br., pp. 13-17).

Disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments place on an individual. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Plaintiff must establish that her impairments result in functional limitations so severe they precluded her from engaging in any substantial gainful activity. <u>See</u> *Dupkunis v. Celebrezze*, 323 F.2d 380 (3d Cir. 1963); *Gardner v. Richardson*, 383 F. Supp. 1 (E.D. Pa. 1974).

### A.     ALJ Hearing and Development of the Record.

Because Plaintiff was unrepresented at the ALJ hearing, she was owed a "heightened duty of care" by the ALJ to ensure that she had a full and fair opportunity to present her claim. According to the Supreme Court in *Sims v. Apfel*, 530 U.S. 103, 110 (2000), it is the ALJ's responsibility to "investigate the facts and develop the arguments both for and against granting benefits." (emphasis added). This principle is mirrored in the Third Circuit. *Reefer v. Barnhart*, 326 F. 3d 376 (3d Cir. 2003); *Early v. Heckler*, 743 F.2d 1002 (3d Cir. 1984); *Hummel v. Heckler*, 736 F.2d 91, 95 (3d Cir. 1984); *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979); *Livingstone v. Shalala*, 614 F. 2d 342 (3d Cir. 1980). "When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer*, 326 F.3d at 380 (quotation omitted); *see also Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) ("[A]n ALJ must secure relevant information regarding a

claimant's entitlement to social security benefits."). Plaintiff contends this principle is particularly critical here because she has significant mental impairments, i.e., anxiety and depression, and a limited education.

Plaintiff does not challenge the validity of her waiver of her right of representation at the ALJ hearing, but she argues that an examination of the hearing transcript demonstrates that her lack of representation had a significant impact on the presentation of her case. Plaintiff also contends that although the ALJ provided her with the opportunity to question the vocational expert who submitted answers to the ALJ's interrogatories, the ALJ did not explain either the importance of a vocational expert or the role of the vocational expert in Social Security hearings. (Tr. 218-21.)

A reviewing Court must determine whether there was clear prejudice to the claimant or unfairness in the administrative hearing. *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969); *Dobrowolsky, supra*. Defendant notes that the ALJ's duty is to ensure that the evidence is sufficient to make a benefit determination and to resolve any material conflicts of ambiguities in the evidence. *See* 20 C.F.R. § 416.920b (explaining how disability determinations are made).

The ALJ complied with his duty to provide Plaintiff with a "full and fair" hearing. The ALJ informed Plaintiff of her right to representation, either by an attorney or a non-attorney. (Tr. 64.) Plaintiff responded that "I don't think that I need a representative, well, a lawyer . . . because I like to organize my own stuff, and I know how to get information myself." (*Id.*) When the ALJ explained that Plaintiff's boyfriend could testify but not be her representative, Plaintiff acknowledged that she understood the difference between her boyfriend testifying and being a representative and that she still "prefer[red] to represent

8

[her]self." (*Id.* at 64-65.) The ALJ also reviewed the treatment records with Plaintiff before admitting them to ensure that Plaintiff found the administrative record acceptable. (*Id.* at 66-71.)

After the ALJ received the vocational expert's written responses to interrogatories but before the ALJ admitted them into the record, the ALJ notified Plaintiff of her right to submit: (1) written comments concerning the evidence; (2) a written statement as to the facts and law she believed applied to the case in light of that evidence; (3) any additional records she wished for the ALJ to consider (including a report from the treating physician); and (4) written questions to the author(s) of the new evidence, i.e., the vocational expert. (Tr. 224.) Through this correspondence, Plaintiff was also informed of her right to request a supplemental hearing at which she would have the opportunity to appear, testify, produce witnesses, submit additional evidence or written or oral statements concerning the facts and law, and/or question witnesses (including the author(s) of the new evidence, i.e., the vocational expert). (*Id.*) There is no evidence that Plaintiff responded to the correspondence or requested an additional hearing.

The ultimate burden of proving disability rests with the claimant. *See* 20 C.F.R. § 416.912 (stating that the claimant must prove disability and furnish medical evidence and other evidence in support of her alleged disability). Although the ALJ has a duty to assist a claimant in developing a full and fair record, *Ventura*, 55 F.3d at 902, he is not required to "search out all the relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *Hess v. Sec'y of Health, Educ. & Welfare,* 497 F.2d 837, 840 (3d Cir. 1974). Plaintiff fails to establish that the ALJ did not

properly give her a full and fair hearing and, as will be discussed in Section C, the record was adequately developed.

      **B.**       **Whether Substantial Evidence Supports the ALJ's Evaluation of Opinion Evidence (Pl.'s Br., pp. 26-39);**

In reaching a decision, the ALJ must consider all relevant evidence of record. *Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolsky*, 606 F.2d at 407; *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). Furthermore, to guard against an abuse of discretion by the Commissioner, the ALJ is required to provide some indication of the evidence which was rejected in arriving at the decision and the reasons therefore, so that a reviewing court can determine whether probative evidence was credited or simply ignored. *See Cotter*, 642 F.2d at 705. The Third Circuit has directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky*, 606 F.2d at 407; *see also Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000), and explain a rejection of the evidence. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 435 (citing *Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987)).

> Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

*Id.* That is, meaningful judicial review of the ALJ's decision is not possible where the ALJ has not sufficiently explained the weight given to all probative evidence. *See* 20 C.F.R. §§ 404.1527(e), (a)(2).

The Commissioner generally accords more weight to the opinion of an examining source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1),

416.927(c)(1).  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight the Commissioner will give that opinion.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  In discussing the weight to be afforded to medical opinions, the United States Court of Appeals for the Third Circuit has noted:

> Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.*, 20 C.F.R. § 404.1527(d)(10)-(2), "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011).  State agent opinions merit significant consideration as well. *See* SSR 96-6p, 1996 SSR LEXIS 3 ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, (3d Cir. 2011).

Plaintiff challenges the partial weight given by the ALJ to the opinions of Psychologists Joseph Primavera, Ph.D. and Helen Parshall, Ph.D.[5]  Dr. Parshall, a non-examining consultative examiner, concluded on January 12, 2016 from her review of the record that Plaintiff is not significantly limited in the ability to carry out very short and simple instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or in proximity to others without being distracted by them, and the ability to make simple work-related decisions.  (Tr. 94.)  Dr. Parshall opined that Plaintiff is moderately limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual

---

[5]     Plaintiff's Brief incorrectly identifies Dr. Parshall as a Psychiatrist.  Pl.'s Br., p. 11.

within customary tolerances and moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods due to Plaintiff's reported panic attacks. (*Id.*)  Dr. Parshall also opined that Plaintiff has moderate limitations in her ability to interact appropriately with the general public due to her socially isolating herself from others. (Tr. 94-95.) Finally, Dr. Parshall opined that Plaintiff is also moderately limited in her ability to set realistic goals or make plans independently of others. (*Id.* at 95.)  The ALJ found the following regarding Dr. Parshall's opinion:

> As for mental impairments, Helen Parshall, Ph.D., said the claimant's mental impairment affects her general adjustment, but do[es] not prevent her from performing simple routine work activities.  She has low stress tolerance and moderately restricted social capabilities. (Ex. 1A).

> The undersigned gives this opinion partial weight, as the evidence supports greater limitations in interactions with the public.

(Tr. 25.)  Plaintiff contends that the ALJ rejected, without sufficient explanation, Dr. Parshall's conclusions that she has concentration and persistence limitations and is moderately limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  (Pl.'s Br. at 9 (citing Tr. 94).  As to understanding, remembering or applying information, the ALJ recognized that Plaintiff has moderate limitations because she has difficulty with her memory and keeping a schedule and needs constant reminders.  (Tr. 21.)  Regarding concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff has moderate limitations because she has difficulty concentrating and irritability, but she could manage her own money and take public transportation without difficulty.  (*Id.*)

When a medical source statement provides for a limitation, or the degree of one, that is inconsistent with other evidence in the record, the ALJ has discretion to choose whether to include it in his assessment of the claimant's RFC and hypothetical. *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2004) (citation omitted). Consistency is a relevant factor in assessing a medical source opinion, 20 C.F.R. § 404.1527(c)(4), and an ALJ properly discounts medical source evidence when it is internally inconsistent or inconsistent with other evidence. *Money v. Barnhart*, 91 F. App'x 210, 213 (3d Cir. 2004); *Wimberly v. Barnhart*, 128 F. App'x 861, 862-863 (3d Cir. 2005); *Truett v. Barnhart*, No. Civ.A. 04-5376, 2005 WL 3216741, at *4 (E.D. Pa. Nov. 23, 2005). The ALJ did not merely accept every conclusion of Dr. Parshall, but rather accepted only those conclusions that were consistent with the findings and evidence of record. Ultimately, the ALJ found regarding Plaintiff's anxiety and depression:

> The claimant alleges she has been disabled since the alleged onset date due to anxiety and depression, but the evidence does not support disabling limitations. The claimant's symptoms have been well-managed with medication. At one point, the treatment notes show her depression was in partial remission. The claimant had periods of noncompliance with treatment, but even without medication, she did not require hospitalization. She enjoyed gardening, and she has a stable relationship. She was urged to get on long-term medications and enter counseling because she was stable [on] high-dose benzodiazepines. However, the claimant denied both treatment methods. The evidence does not support disabling limitations.

(Tr. 25.) SSR 96-8 requires ALJs to consider all relevant evidence when assessing claimants' residual functional capacities. A review of the ALJ's findings shows that he listed the symptoms considered, evaluated those symptoms in light of Plaintiff's testimony and the medical evidence, and found that she could perform simple, routine work activities. SSR 96-8p requires ALJs to provide a "narrative discussion describing

how the evidence supports each conclusion." *Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375-76 (3d Cir. 2009). The ALJ's findings met this standard. Accordingly, substantial evidence supports the weight that the ALJ gave to Dr. Parshall's opinions that Plaintiff had moderate restrictions in daily activities and moderate difficulties in maintaining social functioning and concentration, persistence or pace but that Plaintiff could perform simple, routine work activities. (Tr. 25 (citing 1A, Tr. 91, 95).)

Dr. Primavera examined Plaintiff on January 5, 2016. (Tr. 276-82.) Plaintiff reported that she was hospitalized in 2011 and 2012 for depression, and she recently changed outpatient treatment. (Tr. 276.) She reported difficulty with falling asleep and frequent waking, a dysphoric mood, and anxiety-related symptoms of apprehension and worry. (*Id.*) She also reported having panic attacks and a history of cutting behavior five years before. (Tr. 277.) She stated that she has short term memory and concentration deficits and she described herself as socially isolated. (*Id.*)

Dr. Primavera found that the results of his examination were consistent with psychiatric problems that may significantly interfere with Plaintiff's ability to function on a daily basis. (Tr. 278.) He diagnosed her with generalized anxiety disorder, panic attacks and unspecified depressive disorder and recommended that she continue outpatient behavioral health treatment, including psychiatric consultation. (Tr. 278-279.) He found that she had a good prognosis with continued treatment and was able to manage her own funds with the use of a calculator. (*Id.*)

Dr. Primavera opined that Plaintiff's anxiety and panic impairment affects her ability to understand, remember, and carry out instructions. (Tr. 280.) He opined that she has moderate impairment of her abilities to understand and remember simple instructions;

carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; carry out complex instructions, make judgments on complex work-related decisions; interact appropriately with the public; interact appropriately with supervisors, interact appropriately with co-workers and respond appropriately to usual work situations and to changes in a routine work setting.

(Tr. 280-81.) The ALJ examined Dr. Primavera's opinion as follows:

> Joseph Primavera, Ph.D., had a consultative evaluation with the claimant on January 5, 2016. She had been on Trazadone and Citalopram for depression and difficulty sleeping, and she wanted these medications reinstated. She reported some dysphoric mood because she was grieving over her younger sister's recent death. She described having anxiety and panic attacks and difficulty with memory and concentration. She described herself as isolated, other than seeing her boyfriend with whom she lived. Dr. Primavera said the claimant was well groomed. She had good eye contact and motor behavior, good insight and judgment, and she had goal directed thoughts. She was found in the average cognitive range. The claimant said she could dress herself, but she needed help with cooking, cleaning, laundry, and shopping, and she needed help bathing at times. She could take public transportation and manage her own money. (Ex. 3F).
>
> .   .   .   .
>
> Dr. Primavera said the claimant has generalized anxiety disorder, panic attacks, and depressive disorder. The results of the examination show [] psychiatric problems that may significantly interfere with the claimant's ability to function on a daily basis. The claimant is able to manage her own funds with the use of a calculator. She has moderate limitations in the ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, understand, remember, and carry out simple instructions, make judgments on complex work-related decision[s], interact appropriately with the public, supervisors, and coworkers, and respond appropriately to usual work situations and to changes in a routine work setting. (Ex. 3F). This opinion is given partial weight, as the evidence does not support moderate limitations in understanding, remembering, and carrying out simple instructions.

(Tr. 23-24, 25.) Plaintiff notes that during Dr. Primavera's mental status examination, she was able to count from 1 to 10, but unable to perform simple calculations and unable

to perform serial 3s counting back from 20. (Tr. 278.) During a test of her recent and remote memory skills, Plaintiff was able to immediately recall 3 out of 3 objects, but could recall no objects after a delay and was unable to repeat any digits forward or backward. (*Id.*) Dr. Primavera opined this could be a result of Plaintiff's anxiety or an undiagnosed learning disability and noted Plaintiff's ninth-grade education. (*Id.*)

Plaintiff contends that when the ALJ gave Dr. Primavera's opinion partial weight, he impermissibly substituted his own lay opinion for that of the examining source, which Plaintiff contends is more egregious because Dr. Primavera examined Plaintiff. Defendant notes that other than Dr. Primavera's opined restriction of moderate limitations in understanding, remembering, and carrying out simple instructions, Dr. Primavera's examination notes are consistent with the ALJ's RFC limitations. Defendant notes that although Plaintiff had a dysthymic mood at the examination, she was grieving the death of her sister. (Tr. 23, referencing Ex. 3F, Tr. 276-77.) Although Plaintiff had some difficulties with calculations and memory, Dr. Primavera's remaining mental status examination findings showed that Plaintiff was oriented and cooperative with adequate social skills and presentation, normal posture and motor behavior, appropriate eye contact, normal speech, normal thought processes, a normal affect, average cognitive functioning, appropriate general fund of knowledge, and good insight and judgment. (Tr. 23-24, referencing Ex. 3F, Tr. 277-78.)

Moreover, as Defendant correctly notes, although Plaintiff had depression and anxiety symptoms at evaluations with NHS, she was still alert, oriented, and cooperative with logical thought processes, a sometimes appropriate affect, mostly appropriate thought content, mostly normal speech, fair judgment, fair-to-good insight, good attention

and concentration, average intelligence/cognitive ability, and intact memory. (Tr. 23-24, referring to exhibit 7F, Tr. 334-38, 349, 352; Tr. 349, 352, 359.) Plaintiff denied feeling down, depressed, or hopeless, or having little interest or pleasure in doing things in November 2015. (Tr. 236-37.) The remaining mental status examination findings demonstrated that, despite a largely anxious/depressed mood and affect, Plaintiff was alert, oriented, and cooperative with normal judgment and insight, clear speech, logical and goal-directed thought processes, and intact cognitive function. (Tr. 238, 379, 382, 393, 396, 398, 439, 446, 508.) In addition, Plaintiff's GAF scores consistently showed no more than mild symptoms or functional difficulties. (Tr. 23, referring to exhibit 7F, Tr. 340, 361; Tr. 284.) The ALJ fully reviewed the remaining record evidence of Plaintiff's mental health treatment:

> The evidence shows the claimant was seen for initial psychiatric treatment at Human Services of Montgomery County on August 19, 2015. She complained of anxiety, difficulty concentrating, and being unable to relax. The claimant was working doing landscaping part-time. The claimant is a transgender female and struggled to feel comfortable with her therapist. She was cooperative for most of the assessment stating, "Too many damn questions." She made statements of a paranoid nature regarding the government. The claimant's movements were appropriate. There was some paranoid thought content, fair judgment and insight, and intact memory. She was assessed with a global assessment of functioning (GAF) score of 62, which indicated the claimant has mild symptoms, but [is] generally functioning pretty well with some meaningful relationships. (Ex. 7F).

> The claimant had another evaluation on September 22, 2015. She said she was a nervous and depressed person. When asked about her current stressor, she said, "Coming here in a hurry, eating my breakfast in the car." She complained of being irritable, breaking things, having nightmares, and obsessive-compulsive symptoms. She had not had any medication for five months, but she said that her cousins gave her their medication, and she bought medication off the street. She was assessed with a GAF score of 65, which again indicated mild symptoms. The evidence goes on to show the claimant cancelled an appointment on

November 25, 2015, and she was a no show on December 5, 2015. (Ex. 7F).

. . . .

The claimant was discharged from Human Services of Montgomery County on January 7, 2016. She had missed several appointments and did not respond to any outreach efforts to re-engage in treatment. (Ex. 4F.) The claimant re-engaged in treatment, and was seen for a follow-up therapy appointment on April 21, 2016. On May 6, 2016, it was noted that the claimant was seen "last year" by Dr. K, bu[t] she did not like her and did not come back for a while. She denied depression, but she was anxious and paranoid at times. She said her sleep was poor, and she slept 6.5 hours "last night." She denied flashbacks or nightmares. The claimant was mildly hyperactive and anxious, but she maintained a logical thought process. (Ex. 7F). The claimant's underlying depression and anxiety were described as generally controlled with medications on July 19, 2016. (Ex. 8F).

The claimant remained on the same prescription medications. On February 1, 2017, the claimant's generalized anxiety disorder was stable on Xanax, and her major depression disorder was stable and in partial remission on Citalopram. (Ex. 8F).

On May 20, 2017, the claimant was seen for a refill of Tramadol, Xanax, and Gabapentin. She refused to consider psychiatric long-term medication and counseling. It was explained that use of long-term high-dose benzodiazipines are not recommended past use of an adjunct for stability on anti-anxiety/depression medication. She refused and said she did not want to see a psychiatrist because, "They all think the same and try to change my medication. They think I should be on something lower." The evidence also shows the claimant made several phone calls into the office of Robert Detweiler, DO, for medication reasons. On September 15, 2016, she was in Puerto Rico for a family emergency, and she had been out of medication for a week. She was very argumentative as she asked for refills, but later apologized. She called back on September 19, 2016, requesting a prescription for Tramadol. On November 8, 2016, she said that only her Tramadol prescription was sent to the pharmacy and nothing else. She said that she would have to go to the ER because she may "die tonight" without her medication. On January 4, 2017 the claimant called to say she was given the wrong number of Xanax pills, and she needed more. She had been given 150 pills in November, and they were supposed to last until January 11, 2017. She was upset. She said she had a lot of anxiety, she would lose her breath and die. She was advised it was not fair to say that. A letter was prepared for discharge for disruptive behavior and not following medical advice trying to get medication early. (Ex. 8F).

As shown above, the claimant alleges she has been disabled since the alleged onset date due to anxiety and depression, but the evidence does not support disabling limitations. The claimant's symptoms have been well-managed with medication. At one point, the treatment notes show her depression was in partial remission. The claimant had periods of noncompliance with treatment, but even without medication, she did not require hospitalization. She enjoyed gardening, and she has a stable relationship. She was urged to get on long-term medications and enter counseling because she was stable [on] high-dose benzodiazepines. However, the claimant denied both treatment methods. The evidence does not support disabling limitations.

(Tr. 23, 24-25.) "An ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." *Comiskey v. Astrue*, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202-04 (3d Cir. 2008)). However, an ALJ may not " 'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions." *Middlemas v. Astrue*, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009) (citing *Morales*, 225 F.3d 310, 318 (3d Cir. 2010) (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence)). In this case, the ALJ did not pick and choose among the evidence, rather, substantial evidence supports the partial weight the ALJ gave to the opinions of both Dr. Primavera and Dr. Parshall's opinions.

### C. Whether the ALJ Failed to Address Evidence in the Record

The RFC is a determination of "the most [a claimant] can still do despite [] limitations" "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, at *2. Plaintiff contends that the ALJ erred by failing to explicitly address evidence regarding her "disruptive" panic attacks. She argues that although Drs. Parshall and Primavera noted that she has anxiety and anger-

related limitations attributable to her impairments of depression and anxiety, the RFC provides for only occasional and superficial contact with the public and no more than occasional contact with supervisors and does not include reference to limitations due to her disruptive panic attacks. (Tr. 22.) Plaintiff contends that the ALJ had an obligation to develop the record by identifying the extent that panic attacks have on Plaintiff's ability to work and by failing to develop the record in this area, the ALJ constructed an RFC that does not describe with specificity the practical effects of all her demonstrated impairments and cannot be used as evidence in supporting the ALJ's denial of benefits. 20 C.F.R. § 404.1545; SSR 85-15.

Defendant responds by stating that the ALJ "careful[ly] consider[ed]" the entire record and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 22.) Defendant also contends that the ALJ carefully crafted an RFC assessment that fully accounted for all of Plaintiff's mental functional limitations by restricting Plaintiff to simple, routine, and repetitive tasks requiring no more than simple workplace judgment and with no more than occasional changes in the routine work setting; no more than occasional and superficial contact with the public; and no more than occasional contact with supervisors and co-workers. The ALJ explained that the RFC assessment was "supported by the evidence of record as a whole." (Tr. 25.) He added that he considered all impairments and weighed all medical evidence and medical opinions in accordance with the applicable regulations and rulings. (*Id.*)

Medical opinion evidence is not required as a matter of law to support an ALJ's RFC finding, and controlling regulations state that the ALJ, not a physician, is to make

the ultimate determination of a claimant's RFC. *See* 20 C.F.R. § 416.945(a) ("[W]e will assess your [RFC] based on all the relevant evidence in your case record"); 20 C.F.R. § 416.946(c) (noting the ALJ "is responsible for assessing your [RFC]"). The Third Circuit has stated the same: "[T]he ALJ is responsible for making a [RFC] determination . . . and he is not required to seek a separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("[T]he ALJ is responsible for making [an RFC] determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."). Thus, an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362.

Defendant correctly contends that the ALJ properly relied on Dr. Parshall's medical opinion in determining that Plaintiff could perform simple, routine work activities. (Tr. 25.) *See* 20 C.F.R. § 416.913a(b)(1) (providing that state agency psychologists are highly qualified experts in Social Security disability evaluation). Moreover, the ALJ also incorporated Dr. Primavera's conclusion that Plaintiff had moderate limitations in the ability to make judgments on simple work-related decisions. The ALJ found that the record evidence of Plaintiff's anxiety and depression did not support disabling limitations due to the Plaintiff's symptoms being "well-managed" with medication. It is well settled that if a symptom of an alleged impairment can be reasonably controlled by medication it is not disabling. *Gross v. Heckler*, 785 F.2d 1163,

1166 (4th Cir. 1986). Accordingly, it was not error for the ALJ to not explicitly address evidence regarding Plaintiff's claimed panic attacks.

**VI.  <u>CONCLUSION</u>**

For all of the reasons stated, Plaintiff's Brief and Request for Review is denied and the ALJ's Decision in this case denying Plaintiff's application for supplemental security income from October 2, 2015 through March 7, 2018 is supported by substantial evidence. An appropriate Order follows entering Judgment in favor of the Defendant Commissioner.